AARON M. CLEFTON, Esq.  (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C
#336
Alameda, CA 94501
Telephone:  510/832-500
info@cleftonlaw.com

Attorneys for Plaintiff
HAYLEY DAVIES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAYLEY DAVIES<br><br>    Plaintiff,<br><br>v.<br><br>CAVA GROUP, INC.<br><br>    Defendant. | CASE NO. 8:25-cv-1871<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES REGARDING DENIAL OF SERVICE DOG AND HANDLER TO EQUALLY USE AND ENJOY PUBLIC ACCOMMODATION:**<br><br>**1.  Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2.  Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>**3.  Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff HAYLEY DAVIES complains of Defendant CAVA GROUP, INC., and alleges as follows:

1.      **PREFETORY STATEMENT:** Plaintiff is not a high frequency litigant. This is her first ADA action.  Plaintiff's law firm has represented over 150 unique plaintiffs, the vast majority of whom have filed less than four ADA cases in their lifetimes. Plaintiff's counsel is not a high frequency litigant firm under state

1

1   law.

2       2.    **INTRODUCTION:**  Plaintiff Hayley Davies is a disabled individual

3   who uses the assistance of a service dog to ameliorate her disability. On May 25,

4   2025, Plaintiff went to CAVA located at 1360 S. Beach Blvd, La Habra, California

5   90631 to eat dinner. As is her usual practice, Plaintiff was accompanied by her

6   service dog Lilac who was wearing a vest which identified her as a service dog.

7   Plaintiff entered the restaurant around 8:00 pm, and she got in line to order her

8   food.  When Plaintiff got to the front of the line, Defendant's employee behind the

9   counter told her that she had to leave.  Plaintiff was shocked and asked him why she

10  had to leave. Defendant's employee told her that dogs were not allowed in the

11  restaurant.  Plaintiff explained that her dog is a task trained service dog and

12  therefore, according to federal law, is allowed to accompany her anywhere that the

13  general public is allowed inside of CAVA.  Defendant's employee told Plaintiff he

14  understood that her dog is a service dog, but that is Defendant's policy that no dogs,

15  *including service dogs*, are allowed inside CAVA.  Defendant's employee then

16  walked away from Plaintiff and refused to serve her.

17      3.    Defendant denied disabled Plaintiff Hayley Davies equal access to

18  CAVA because she is a disabled individual who uses a service dog to assist her

19  with tasks related to her disability.  Further, Defendant's employee treated Plaintiff

20  with disrespect and refused to serve her due to the presence of her service dog.

21      4.    The Defendant's decision to not allow service dogs in its restaurant is

22  patently discriminatory and did not afford equal access and enjoyment of its

23  services.  It also contravenes the Department of Justice's technical assistance and

24  guidance on the subject of "Service Animals."  In relevant part, the guidance states:

25  •   A person with a disability cannot be asked to remove his service

26      animal from the premises unless: (1) the dog is out of control and the

27      handler does not take effective action to control it or (2) the dog is not

28      housebroken. When there is a legitimate reason to ask that a service

2

animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.
- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at

https://www.ada.gov/resources/service-animals-2010-requirements/.

5.    Plaintiff has eaten at other CAVA restaurants several times before this incident, although this was her first visit to the La Habra location.  She enjoys the food, and the La Habra location is the closest CAVA to her home. Plaintiff intends to return to CAVA in the future but cannot do so until the policies of the restaurant are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. She has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing her equal access to service at the restaurant because she is a disabled person who needs the assistance of her qualified service dog.  Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at CAVA.

6.    **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

7.    **VENUE:**  Venue is proper in this court pursuant to 28 U.S.C. section 1391(b) and is proper because the real property which is the subject of this action is in this district and that Plaintiff's causes of action arose in this district.

3

8.    **INTRADISTRICT:**  This case should be assigned to the Southern Division because the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

9.    **PARTIES:**  Plaintiff Hayley Davies is a "qualified" disabled person who uses a service dog to assist her with certain tasks related to her disability.  She suffers from postural orthostatic tachycardia syndrome (POTS) which dysregulates her autonomic nervous system that regulates the cardiovascular system. When Plaintiff experiences a POTS episode, she experiences a racing heartbeat and a significant drop in blood pressure which can cause dizziness and fainting. Additionally, Plaintiff experiences heat intolerance and has difficulty standing for long periods of time and walking long distances. Plaintiff's disability affects her ability to walk, stand, and can cause her to be disoriented or faint.

10.    Plaintiff relies upon her service dog, a professionally trained German shepherd mix named "Lilac," to assist her with certain tasks including alerting her to POTS symptoms such as a drop in blood pressure, leading her to a safe place of refuge when she becomes disoriented, and helping her get up from the ground if she faints. Lilac has been trained to smell changes in the scent of Plaintiff's sweat during a POTS episode.  She is trained to bump Plaintiff's leg when she exhibits initial symptoms of POTS so that Plaintiff can take steps to decrease her symptoms and get to a safe place. Lilac is trained to become more persistent with her alerts if Plaintiff ignores the initial alert.

11.    Lilac was professionally trained to be public access service dog, and then individually trained by Plaintiff to perform the work and tasks she needs her to perform.  Plaintiff and Lilac have been training and working together for one and a half years, and they reinforce their training together daily.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1)..

12.    Defendant CAVA GROUP, INC. is and was at all times relevant to

4

1    this Complaint the owner, operator, lessor and/or lessee of the subject business

2    located at 1360 S. Beach Blvd, La Habra, California 90631, known as CAVA.

3        13.    CAVA is a place of "public accommodation" and a "business

4    establishment" subject to the requirements *among other things* of multiple

5    categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of

6    1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code

7    sections 54 *et seq.*

8        14.    **FACTUAL STATEMENT:**  Plaintiff Hayley Davies has been

9    working with her service dog Lilac for a year and a half.  Lilac is a four-year-old

10   German shepherd mix who was trained to be a service dog. Lilac was both

11   professionally trained and individually trained by Plaintiff to be a service dog.

12   Plaintiff has also continued to train Lilac to serve her specific needs throughout

13   their relationship.  Lilac is specifically trained as a cardiac alert dog, and she has

14   been trained to alert Plaintiff to the onset of cardiac symptoms, such as racing

15   heartbeat and low blood pressure.  Lilac is trained to assist Plaintiff with certain

16   tasks including leading her to a safe place of refuge when she becomes disoriented

17   or dizzy and helping her get up from the ground if Plaintiff faints.

18       15.    Lilac is a working service dog; she is not a pet.  Plaintiff and Lilac

19   have trained extensively together, and they supplement that training daily.  Plaintiff

20   takes Lilac everywhere with her in public.  It is important they stay together as

21   much as possible because (a) Lilac provides important services for Plaintiff; (b)

22   Lilac is a medical alert dog who is able to alert Plaintiff of potentially life-

23   threatening medical conditions so that she can find a safe place and seek immediate

24   medical treatment; and (c) it is part of the training and bonding requirement that

25   they be together constantly to maintain their bond. Where Plaintiff goes, Lilac goes.

26   Below are photos of Lilac as she looked on the day of the incident:

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    16.    On May 24, 2025, Plaintiff decided to go out for dinner at the CAVA

22  in La Habra. She had eaten at the CAVA near her work several times, but she had

23  not previously been to the La Habra location, which is the closest CAVA to her

24  home. Plaintiff drove her vehicle to Westridge Plaza and parked. As is her usual

25  practice, Plaintiff was accompanied by her service dog Lilac.

26    17.    Plaintiff and Lilac exited the vehicle and walked to CAVA. The day

27  had been very busy for Plaintiff.  She had skipped lunch and was starving when she

28  arrived at the restaurant around 8:00 pm. After entering CAVA, Plaintiff and Lilac

6

got in line to order at the counter. There was one person in front of Plaintiff and Lilac.  When they had finished ordering, Plaintiff stepped up to the counter to place her food order.

18.    As Plaintiff approached the counter one of Defendant's employee, who on information and belief was a manager named Jose, told her she had to leave the restaurant. Plaintiff was surprised at this abrupt request, and she asked him why she had to leave.  Defendant's manager told Plaintiff that no dogs were allowed inside the restaurant.

19.    Plaintiff explained that her dog is a service dog and therefore allowed to accompany her inside the restaurant, but Defendant's manager just replied, "I know, but CAVA's policy is no dogs." Plaintiff informed Defendant's manager that such a policy is against federal law. She elaborated that it is illegal to deny access to a service dog at a public place such as CAVA.

20.    Defendant's manager put up his hands in a pose of innocence and responded that he was "just the messenger" of this policy. Then, he reiterated that dogs were not allowed inside of CAVA and asked Plaintiff to leave.

21.    Plaintiff repeated that her dog is a task-trained service animal and must be allowed inside CAVA, but at this point, Defendant's manager was walking away from the counter. Defendant refused to serve her, so Plaintiff left CAVA.

22.    By the time Plaintiff left CAVA, there were several customers lined up behind her watching the situation unfold. She felt humiliated and dehumanized by Defendant's treatment of her.

23.    Plaintiff was extremely upset.  She and Lilac went to her vehicle, and Plaintiff immediately called her boyfriend and told him the whole story. While she was speaking to her boyfriend, Plaintiff also submitted a complaint regarding the incident through CAVA's corporate website. Plaintiff got the following emailed response from CAVA:

//

Hi Hayley,

Thank you for reaching out and for bringing this to our attention. We're sincerely sorry to hear about this visit and want to apologize for your interaction with our team member. We recognize our team members are representatives of our brand and values both in and out of our restaurants and what you experienced is far from the high standards we have set. Please know that I've gone ahead and contacted leaders of this location to ensure that the team will be reminded of our trainings, of our commitment to hospitality, and of our goal of making our customers feel welcome and at ease the moment they walk through our doors.

Additionally, while we understand this cannot make up for what you experienced, we are extremely disappointed with the interaction you had with our brand and would like to extend our sincerest apologies, along with CAVA credit on us. It doesn't look like you have a CAVA account, but you can quickly set one up here: CAVA.com or via our CAVA App . Once you register, let us know what email address you used and we can send it over.

We hope that you'll accept this small gesture as we continue to improve and work with this location to ensure the best possible guest experience.

Kind regards,
**Sean M.**
Customer Experience Specialist

24.    This "apology" notably (1) does not mention what Defendant's service dog policy is, (2) did affirm that Defendant would serve Plaintiff at CAVA while she is accompanied by her service dog, or (3) state that Defendant would provide training to its employees regarding compliance with the ADA and serving disabled persons while accompanied by service dogs.

25.    Plaintiff has a desire to return to CAVA to enjoy the food they offer. However, Plaintiff does not want to go back to the restaurant because her previous experiences have made it clear that Defendant does not maintain a service animal policy that complies with state and federal access laws.  It is also clear that Defendant's employees have not received training about how to interact with disabled patrons who rely on service dogs for assistance.

26.    Plaintiff wishes to return to CAVA, but only *after* Defendant has implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the restaurant until these policies and training are in

1   place.

2   ## FIRST CAUSE OF ACTION:
3   ## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
    ## (42 U.S.C. §§ 12101 *et seq.*)

4   27.    Plaintiff repleads and incorporates by reference, as if fully set forth

5   again here, the factual allegations contained in Paragraphs 1 through 26, above, and

6   incorporates them here by reference as if separately repled hereafter.

7   28.    In 1990 Congress passed the Americans with Disabilities Act after

8   finding that laws were needed to more fully protect "some 43 million Americans

9   with one or more physical or mental disabilities; that historically society has tended

10  to isolate and segregate individuals with disabilities;" that "such forms of

11  discrimination against individuals with disabilities continue to be a serious and

12  pervasive social problem"; that "the Nation's proper goals regarding individuals

13  with disabilities are to assure equality of opportunity, full participation, independent

14  living and economic self-sufficiency for such individuals"; and that "the continuing

15  existence of unfair and unnecessary discrimination and prejudice denies people

16  with disabilities the opportunity to compete on an equal basis and to pursue those

17  opportunities for which our free society is justifiably famous."  42 U.S.C. §

18  12101(a).

19  29.    The ADA provides, "No individual shall be discriminated against on

20  the basis of disability in the full and equal enjoyment of the goods, services,

21  facilities, privileges, advantages, or accommodations of any place of public

22  accommodation by any person who owns, leases, or leases to, or operates a place of

23  public accommodation." 42 U.S.C. § 12182.

24  30.    Plaintiff is a qualified individual with a disability as defined in the

25  Rehabilitation Act and in the Americans with Disabilities Act of 1990.

26  31.    CAVA is a public accommodation under Title III of the ADA.  42

27  U.S.C. § 12181(7)(B).

28  32.    The ADA prohibits, among other types of discrimination, "failure to

9

make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

33.     Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

34.     Defendant has a policy and practice of denying access to patrons of CAVA with service animals. The Defendant's decision to only allow service dogs to sit outside at its restaurant contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

- Establishments that sell or prepare food must generally allow service animals in public areas even if state or local health codes prohibit animals on the premises.

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at
https://www.ada.gov/resources/service-animals-2010-requirements/.

35.    On information and belief, as of the date of Plaintiff's most recent visit to CAVA on or about May 24, 2025, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

36.    In passing the Americans with Disabilities Act of 1990 ("ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b).

37.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 U.S.C. § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "restaurant." 42 U.S.C. § 12181(7)(B).

11

38.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

The acts and omissions of Defendant set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq.*

39.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on

the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

40.    Defendant's actions continue to deny Plaintiff's right to full and equal access by deterring Plaintiff from patronizing CAVA and discriminated and continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

41.    Under the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Under section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

42.    Plaintiff seeks relief under remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to

1  CAVA, in light of Defendant's policy barriers.

2      WHEREFORE, Plaintiff prays for relief as stated below.

3  **SECOND CAUSE OF ACTION:**
   **DAMAGES AND INJUNCTIVE RELIEF**
4  **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
   **FACILITIES  IN A PUBLIC ACCOMMODATION**
5  **(Civil Code §§ 54 *et seq.*)**

6      43.    Plaintiff re-pleads and incorporates by reference, as if fully set forth

7  hereafter, the factual allegations contained in Paragraphs 1 through 42 of this

8  Complaint and all paragraphs of the third cause of action, as plead infra,

9  incorporates them herein as if separately re-pleaded.

10      44.    Under the California Disabled Persons Act (CDPA), people with

11  disabilities are entitled to the "full and free use of . . . public buildings, . . . public

12  facilities, and other public places."  Civil Code § 54(a).

13      45.    Civil Code section 54.1(a)(1) further guarantees the right of "full and

14  equal access" by persons with disabilities to "accommodations, advantages,

15  facilities . . . hotels, lodging places of accommodation, amusement or resort, or

16  other places to which the general public is invited."  Civil Code § 54.1(c) also

17  specifies that "individuals with a disability and persons authorized to train service

18  dogs for individuals with a disability, may take dogs, for the purpose of training

19  them as guide dogs, signal dogs, or service dogs in any of the places specified in

20  subdivisions (a) and (b)."

21      46.    Civil Code section 54.2(a) specifically protects the right of "every

22  individual with a disability" "to be accompanied by a guide dog, signal dog, or

23  service dog, especially trained for the purpose, in any of the places specified in

24  Section 54.1."

25      47.    Civil Code section 54.3(b) makes liable "Any person or persons, firm

26  or corporation who denies or interferes with admittance to or enjoyment of the

27  public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the

28  rights of an individual with a disability under Sections 54, 54.1 and 54.2."  This

1  section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but

2  is not limited to, preventing or causing the prevention of a guide dog, signal dog, or

3  service dog from carrying out its functions in assisting a disabled person."

4      48.    CAVA is a public accommodation within the meaning of the CDPA.

5  On information and belief, Defendant is the owner, operator, lessor or lessee of the

6  public accommodation.

7      49.    Defendant made the decision to knowingly and willfully exclude

8  Plaintiff and her service dog from its public accommodation and thereby deny

9  Plaintiff her right of entrance into its place of business with her service dog.  As a

10  result of that decision Plaintiff has faced the continuing discrimination of being

11  barred from entering this public accommodation and place of business based on

12  Defendant's illegal prohibition of her legally protected use of her service dog.

13  Plaintiff has continued to suffer denial of access to these facilities, and faces the

14  prospect of unpleasant and discriminatory treatment should she seek to return to

15  these facilities.  Plaintiff cannot return to CAVA until she receives the protection of

16  this Court's injunctive relief, and she has continued to suffer discrimination daily

17  since February 26, 2025, all to is statutory damages under California Civil Code §§

18  54.1, 54.2, and 54.3.

19      50.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit

20  the acts and omissions of Defendant as complained of here which are continuing on

21  a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and

22  other members of the public who are disabled, who require the assistance of service

23  animals, from full and equal access to these public facilities.  Such acts and

24  omissions are the cause of humiliation and mental and emotional suffering of

25  Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-

26  class citizen and serve to discriminate against her on the sole basis that she is a

27  person with disabilities who requires the assistance of a service animal.

28      51.    Plaintiff wishes to return to patronize CAVA but is deterred from

returning to use these facilities, because the lack of access and the significant policy

barriers will foreseeably cause her further difficulty, discomfort and

embarrassment, and Plaintiff is unable, so long as such acts and omissions of

Defendant continue, to achieve equal access to and use of these public facilities.

Therefore, Plaintiff cannot return to patronize CAVA and its facilities and is

deterred from further patronage until these facilities are made properly accessible

for disabled persons, including Plaintiff and other disabled individuals who require

the assistance of a service animal.

52.    The acts of Defendant have proximately caused and will continue to

cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks

injunctive relief as to Defendant's inaccessible policies.   As to Defendant that

currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff

seeks preliminary and permanent injunctive relief to enjoin and eliminate the

discriminatory practices that deny full and equal access for disabled persons, and

seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

53.    Wherefore Plaintiff asks this Court to preliminarily and permanently

enjoin any continuing refusal by Defendant to grant full and equal access to

Plaintiff in the ways complained of and to require Defendant to comply

immediately with the applicable statutory requirements relating to access for

disabled persons.  Such injunctive relief is provided by California Civil Code

sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court

award damages under Civil Code section 54.3 and other law and attorney fees,

litigation expenses, and costs under Civil Code sections 54.3 and 55, Code of Civil

Procedure section 1021.5 and other law, all as prayed below for.

54.    **DAMAGES:**  Because of the denial of full and equal access to the

described facilities and due to the acts and omissions of Defendant in owning,

operating, leasing, constructing, altering, and/or maintaining the subject facilities,

Plaintiff has suffered a violation of her civil rights, including, but not limited to,

16

rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to her damages per Civil Code section 54.3, including general and statutory damages, as stated below.  Defendant's actions and omissions to act constitute discrimination against Plaintiff because she was and is disabled and unable, because of the policy barriers created and/or maintained by Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize CAVA and will continue to cause her damages each day these barriers to access and policy barriers are still present.

55.     Although Plaintiff need not prove wrongful intent to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, before this complaint was filed.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

56.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, under Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying

1    "public interest" attorney fees, litigation expenses and costs under California Code

2    of Civil Procedure section 1021.5 and other applicable law.

3    57.    Plaintiff suffered damages as above described as a result of

4    Defendant's violations.  Damages are ongoing based on her deterrence from

5    returning to CAVA.

6    WHEREFORE, Plaintiff prays for relief as stated below.

7    **THIRD CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH**
8    **ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS**
**WITH DISABILITIES ACT AS INCORPORATED**
9    **BY CIVIL CODE SECTION 51(f)**

10    58.    Plaintiff re-pleads and incorporates by reference, as if fully set forth

11    again here, the allegations contained in Paragraphs 1 through 57 of this Complaint

12    and incorporates them herein as if separately re-pleaded.

13    59.    At all times relevant to this action, the Unruh Civil Rights Act,

14    California Civil Code § 51(b), provided that:

15    > All persons within the jurisdiction of this state are free and equal, and
16    > no matter what their sex, race, color, religion, ancestry, national origin,
   > disability, or medical condition are entitled to the full and equal
17    > accommodations, advantages, facilities, privileges, or services in all
   > business establishments of every kind whatsoever.

18    60.    California Civil Code section 52 provides that the discrimination by

19    Defendant against Plaintiff on the basis of her disability constitutes a violation of

20    the general anti-discrimination provisions of sections 51 and 52.

21    61.    Each of Defendant's discriminatory acts or omissions constitutes a

22    separate and distinct violation of California Civil Code section 52, which provides

23    that:

24    > Whoever denies, aids or incites a denial, or makes any discrimination
   > or distinction contrary to section 51, 51.5, or 51.6 is liable for each and
25    > every offense for the actual damages, and any amount that may be
   > determined by a jury, or a court sitting without a jury, up to a maximum
26    > of three times the amount of actual damage but in no case less than four
   > thousand dollars ($4,000), and any attorney's fees that may be
27    > determined by the court in addition thereto, suffered by any person
   > denied the rights provided in Section 51, 51.5, or 51.6.

28

18

62.     Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief under California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

63.     The actions and omissions of Defendant as alleged here constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs under California Civil Code sections 51 and 52.  As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and is responsible for statutory and compensatory damages to Plaintiff, according to proof.

64.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs under California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure section 1021.5 and other applicable law.

65.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as stated below.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as stated in this Complaint.  Plaintiff has suffered and will continue to suffer

19

1    irreparable injury because of the unlawful acts, omissions, policies, and practices

2    of Defendant as alleged herein, unless Plaintiff is granted the relief she requests.

3    Plaintiff and Defendant have an actual controversy and opposing legal positions on

4    Defendant's violations of the laws of the United States and the State of California.

5    The need for relief is critical because the rights at issue are paramount under the

6    laws of the United States and the State of California.

7         WHEREFORE, Plaintiff Hayley Davies prays for judgment and the

8    following specific relief against Defendant:

9         1.    An order enjoining Defendant, its agents, officials, employees, and all

10   persons acting in concert with them:

11        a.   From continuing the unlawful acts, conditions, and practices described

12             in this Complaint;

13        b.   To modify its policies and practices to accommodate service dog users

14             in conformity with federal and state law, and to advise Plaintiff that

15             her service dog will not be excluded should she desire to enter and use

16             the services of CAVA;

17        c.   That the Court issue preliminary and permanent injunction directing

18             Defendant as current owner, operator, lessor, and/or lessee and/or its

19             agents of the subject property and premises to modify the above

20             described property, premises, policies and related policies and

21             practices to provide full and equal access to all persons, including

22             persons with disabilities; and issue a preliminary and permanent

23             injunction under ADA section 12188(a) and state law directing

24             Defendant to provide facilities usable by Plaintiff and similarly

25             situated persons with disabilities, and which provide full and equal

26             access, as required by law, and to maintain such accessible facilities

27             once they are provided and to train Defendant's employees and agents

28             in how to recognize disabled persons and accommodate their rights

20

1    and needs;

2        d.    An order retaining jurisdiction of this case until Defendant has fully

3            complied with the orders of this Court, and there is a reasonable

4            assurance that Defendant will continue to comply in the future absent

5            continuing jurisdiction;

6    2.    An award to Plaintiff of statutory, actual, general, treble, and punitive

7    damages in amounts within the jurisdiction of the Court, all according to proof;

8    3.    An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a,

9    California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5,

10    and as otherwise permitted by law, of the costs of this suit and reasonable attorneys'

11    fees and litigation expenses;

12    4.    An award of prejudgment interest under Civil Code § 3291;

13    5.    Interest on monetary awards as permitted by law; and

14    6.    Grant any other relief that this Court may deem just and proper.

15    Date: August 22, 2025                    CLEFTON DISABILITY LAW

16

17                        ___/s/ Aaron M. Clefton___
                        By AARON M. CLEFTON, Esq.
18                        Attorneys for Plaintiff
                        HAYLEY DAVIES
19

20                        **JURY DEMAND**

21    Plaintiff demands a trial by jury for all claims for which a jury is permitted.

22    Date: August 22, 2025                    CLEFTON DISABILITY LAW

23

24                        ___/s/ Aaron M. Clefton___
                        By AARON M. CLEFTON, Esq.
25                        Attorneys for Plaintiff
                        HAYLEY DAVIES
26

27

28

21